UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                    Plaintiff,              Hon. Nancy G. Edmunds
                                            Case No. 10-CR-20005

        v.

D-1 UMAR FAROUK ABDULMUTALLAB,

                    Defendant.
_____/


MOTION HEARING and PRETRIAL CONFERENCE
before the Honorable Nancy G. Edmunds
Theodore Levin U.S. Courthouse
231 West Lafayette Boulevard
Detroit, Michigan

August 17, 2011


APPEARANCES:

For the Government:   Mr. Jonathan Tukel, Esq.
                      Ms. Cathleen M. Corken, Esq.
                      Mr. Michael C. Martin, Esq.
                      United States Attorney's Office
                      211 W. Fort Street, Suite 2001
                      Detroit, MI 48226

For the Defendant:    Mr. Umar Farouk Abdulmutallab, In Pro Per

Standby Counsel:      Mr. Anthony T. Chambers, Esq.
                      ANTHONY T. CHAMBERS LAW OFFICE
                      535 Griswold, Suite 1330
                      Detroit, MI 48226

                      _   _   _


To obtain a copy of this official transcript, contact:
Suzanne Jacques, Official Federal Court Reporter
email: jacques@transcriptorders.com

# I N D E X

| Proceeding | Page |
|---|---|
| MOTION FOR COMPETENCY REVIEW | |
|     Argument by Mr. Chambers | 4 |
|     Response by Mr. Martin | 4 |
| | |
| RE: DEFENDANT ABDULMUTALLAB'S REQUEST FOR | |
| ADDITIONAL DISCOVERY MATERIALS | |
|     Response by Mr. Tukel | 16 |
|     Argument by Mr. Chambers | 17 |
|     Response by Mr. Tukel | 18 |
|     Argument by Mr. Chambers | 19 |
| | |
| Pretrial Conference | 20 |

1                              Detroit, Michigan

2                              August 17, 2011

3                              3:00 p.m.

4                         -     -    -

5          THE CLERK:  Court calls the case of the United

6    States versus Umar Farouk Abdulmutallab, Case Number 10-20005.

7    Place your appearances on the record please.

8          MR. MARTIN:  Michael Martin, Jonathan Tukel and

9    Cathleen Corken for the government, Your Honor.

10          MR. CHAMBERS:  Anthony Chambers and Stephon Johnson

11    along with Mr. Abdulmutallab, who is seated to my left.

12          THE COURT:  We have quite a few matters to take up

13    today, the first being the sealed motion that was filed by

14    standby counsel last week, a few days ago, actually, and

15    there's been a fair amount of paper filed about that motion,

16    and I'd like to say for the benefit of everyone sitting there,

17    the motion was filed for a competency hearing for

18    Mr. Abdulmutallab, and it's my understanding that he was aware

19    that you were going to be filing that motion.

20          Is that correct, Mr. Chambers?

21          MR. CHAMBERS:  Yes, he was aware of it.

22          THE COURT:  Yes.  I understand that he did not

23    authorize the filing of that motion, that you filed that

24    feeling that it was your obligation to the court to do so.

25          MR. CHAMBERS:  That is correct.

                 USA -v- Abdulmutallab   Case No. 10-CR-20005

1          THE COURT:  All right.  Would you like to speak to

2     that first, or would you like to hear from the government?  Why

3     don't you speak to it first.

4                                              (3:03 p.m.)

5          MR. CHAMBERS:  Your Honor, I think that with regard

6     to speaking to the motion, what is enclosed in the pleadings,

7     we would rely on that.  It's two issues, I think, both as it

8     relates to standing trial, and secondly, with the ability to

9     self representation, but we'll rely on our pleadings.

10         THE COURT:  All right.  And Mr. Tukel or

11    Mr. Martin, Ms. Corken?

12         MR. MARTIN:  Yes, Your Honor.

13         We, in our motion for the hearing today, we asked

14    for actually several things, one of which was a decision on

15    whether or not the sealed motion is in fact sealed.

16         THE COURT:  Well, it was filed under seal, and I

17    think it was probably appropriately filed under seal,

18    notwithstanding your objections.  I indicated when I scheduled

19    this hearing that the courtroom would be open and that we would

20    discuss the substance of it as if it had been filed without

21    being under seal, so --

22         MR. MARTIN:  Yes.

23         THE COURT:  So it's kind of a moot issue at this

24    point.

25         MR. MARTIN:  It is moot for, with respect to that,

                    USA -v- Abdulmutallab   Case No. 10-CR-20005

1    but I do want to highlight that, because going forward I think

2    it's important if we do have sealed pleadings that the normal

3    procedures be followed, so that there is a motion to seal and a

4    basis, so that the defendant knows that something has been

5    sealed and the reason for it, so that if he objects he can have

6    an opportunity to object.

7              THE COURT:  I don't disagree with that.  There

8    should be a motion to seal, the Court should rule on that.  I'm

9    satisfied that in this particular instance, the motion was

10   filed by Mr. Chambers as an officer of the Court to bring to my

11   attention a matter that he thought needed to be addressed and

12   would best not be open as an initial matter.

13             MR. MARTIN:  Yes, ma'am.

14             THE COURT:  Okay.

15             MR. MARTIN:  So then the second thing we asked for

16   was a hearing in which you would make inquiry of Mr. Chambers

17   and the defendant regarding the subject of the sealed motion so

18   that you could rule on that motion.

19             THE COURT:  Yes, and that's what we're here for.

20             MR. MARTIN:  And then the third thing we asked for

21   was some basic motion filing procedures, and the nature in

22   which Mr. Chambers filed the under seal motion is a concern to

23   us because it's our understanding that he did so ex parte, that

24   he did so without the knowledge of the defendant, filed it, and

25   then subsequently informed the defendant about it, and the

USA -v- Abdulmutallab    Case No. 10-CR-20005

1    defendant in fact objected.

2              What we are suggesting to the Court is that, not

3    that Mr. Chambers not file motions even if the defendant

4    objects to them, but he simply follow two steps; one, show the

5    defendant the motion before he files it, and two, either have

6    the defendant sign it, or if the defendant doesn't sign it, so

7    indicate in the motion so that the Court then knows what the

8    defendant agrees with, what he doesn't agree with.

9              Right now, we're in a situation where we've had

10   several instances where Mr. Chambers has filed motions and it's

11   not clear whether the defendant agrees or disagrees.  We have

12   to then have a hearing, the defendant has to be brought down,

13   you have to ask the defendant do you agree with this, do you

14   not agree with it.  There is no record on the docket as to what

15   he has actually signed and agrees to or not.

16             THE COURT:  Well, I don't think that's accurate.  I

17   think that this is the only motion that was filed without an

18   explicit agreement by the defendant that he wanted the motion

19   to be filed.

20             In addition, I believe that Mr. Chambers did

21   discuss this motion with the defendant, who had, as I

22   understand, some mixed feelings about it and did not agree with

23   it, but that Mr. Chambers then went ahead and filed it as an

24   officer of the Court.  Given the nature of the motion, I

25   completely understand that, but I don't think this is a matter

1    of an ongoing practice.  My experience has been that

2    Mr. Chambers, when he files motions, does get the agreement of

3    Mr. Abdulmutallab before he files the motions, and files along

4    with the motion either a signed copy or an assent to the

5    motions.

6              MR. MARTIN:  Well, there have been instances where

7    motions have been filed and there is no indication in the

8    motion where the defendant agrees or doesn't agree, and then

9    after the fact, sometimes several days after the fact, along

10   comes an indication that the defendant does consent.

11             And in at least one instance that I can recall,

12   after the motion was filed we asked for a hearing, just like we

13   did this time, to indicate whether the defendant agrees or does

14   not agree, and then comes the permission.

15             What I'm suggesting -- or the hearing.

16             What I'm suggesting is that just by following a

17   simple procedure we cannot only obviate the need for hearings,

18   we can then have a clear record on the docket as to what he

19   agrees to and what he doesn't so that then you know and we know

20   where there's differences of opinion.

21             THE COURT:  Well, I don't want to overstate what

22   you know and what I know or don't know.  I think we all know

23   that Mr. Abdulmutallab has agreed to every motion that's been

24   filed with the exception of this one sealed motion.

25             MR. MARTIN:  That's correct.

                 USA -v- Abdulmutallab    Case No. 10-CR-20005

1          THE COURT:  I don't disagree with you that it would

2     be preferrable, and I will ask Mr. Chambers, please, to have

3     the signature or assent of Mr. Abdulmutallab filed

4     simultaneously with any future motions that are filed.  He

5     wants to represent himself, we've respected that request, and I

6     believe that he needs to be on board at the outset so we don't

7     need to go afterward and get the assent or the agreement with

8     the motion even if you had an oral agreement previously.

9          I don't think any hearing would have been obviated

10     by an earlier signature.  Hearings are required on these

11     motions, and that's --

12          MR. MARTIN:  In this case I agree, I agree.

13          So, and turning to that, I don't know how the Court

14     wants to proceed, but I would just offer perhaps a suggestion.

15          THE COURT:  Go ahead.

16          MR. MARTIN:  If you were to conduct an inquiry of

17     the defendant regarding the subject of the motion for

18     competency, one technique that I think could be helpful for the

19     record is to ask the defendant open-ended questions; ask him to

20     explain in his own words, you know, for example, who you are

21     and what your role in the case is, who Mr. Chambers is, what

22     his role in the case is, what's --

23          Those types of questions go to --

24          THE COURT:  With all due respect, Mr. Martin, I

25     don't think that's really the nature of this.  He knows who I

                        USA -v- Abdulmutallab    Case No. 10-CR-20005

1   am, he knows who Mr. Chambers is.  The question is, you know,

2   is he sufficiently aware of the nature of the charges and the

3   possible penalties so that he is competent to represent himself

4   and go forward and defend himself against those charges, and

5   given the possible penalties.

6           MR. MARTIN:  Well, I don't know, because there

7   weren't many specifics in the motion about the basis for the

8   motion.  I don't know exactly what the issue is with

9   competency, but I would suggest to the Court that it is broader

10  than just understanding the charges.  I mean, he has to be able

11  to understand the proceedings in all the respects --

12          THE COURT:  Yes.

13          MR. MARTIN:  -- and who the parties are and how to

14  proceed at trial, so I think whatever questions the Court may

15  want to ask, all I was doing is suggesting you may want to ask

16  nonleading, open-ended questions so you hear from the defendant

17  in his own words what his understanding of the proceedings are.

18          THE COURT:  Mr. Chambers.

19          MR. MARTIN:  Thank you.

20                                          (3:11 p.m.)

21          MR. CHAMBERS:  Briefly, just so the record is

22  clear, this was the only motion that he did not agree with in

23  advance, and secondly, as it relates to the filing of the

24  signature after the motion, that was done because

25  Mr. Abdulmutallab had actually signed already previous copies,

                    USA -v- Abdulmutallab    Case No. 10-CR-20005

1   written on it, made changes to it, so that those modifications

2   had to be made as if it was a draft.

3          THE COURT:  And I would say for the record that you

4   brought that to my attention, or your colleague brought that to

5   my attention and asked if they should be filed with the

6   handwritten edits on it, and I thought that the record would be

7   clearer if he -- if they were retyped as he wanted them filed,

8   and that he had then assented to it.

9          MR. CHAMBERS:  Secondly, as it relates to filing

10  matters under seal, this case is one where there is a

11  protective order, and there's a protective order which we've

12  been trying to abide by, that we agreed to in order to be able

13  to review the discovery in this case.  If we are to file all

14  matters publicly, that obviously will be inconsistent with the

15  protective order.  We have no problem with that if that's what

16  the Court instructs us to do, or what the government would like

17  to do.

18          We've noticed that while we are abiding by the

19  protective order, many of the government's pleadings and

20  filings actually include comments on the evidence which we

21  cannot discuss publicly because of the protective order.  So

22  it's a little uneven handed, unfortunately, but we will

23  continue to abide by the protective order unless it's

24  abolished.

25          THE COURT:  All right.  Let me ask you before you

              USA -v- Abdulmutallab    Case No. 10-CR-20005

1   sit down, you're not withdrawing the motion for a competency

2   hearing?

3                   MR. CHAMBERS:  I am simply asking the Court to make

4   a determination whether or not an exam would be appropriate.

5   We bring the matter to the Court's attention, and we'd ask the

6   Court simply to determine whether or not there even should be

7   one.

8                   THE COURT:  All right.

9                   MR. CHAMBERS:  I believe Mr. Abdulmutallab is not

10  in agreement with it.

11                  THE COURT:  Mr. Abdulmutallab, could you step

12  forward please.

13                  I need to ask you a few questions.  Could you raise

14  your right hand, please, and be sworn.

15                  THE DEFENDANT:  Yes.

16                  THE COURT:  Do you solemnly swear the testimony

17  you're about to give in the matter here pending shall be the

18  truth, the whole truth, and nothing but the truth, so help you

19  God?

20                  THE DEFENDANT:  Yes.

21                  THE COURT:  Okay.  You understand -- have you gone

22  over the indictment in this case on your own and with standby

23  counsel, Mr. Chambers?

24                  THE DEFENDANT:  Yes.

25                  THE COURT:  Do you understand the counts that are

                    USA -v- Abdulmutallab   Case No. 10-CR-20005

8/17/11 Motion Hearing and Pretrial Conference

1    filed against you and the nature of the charges that you're

2    facing in this case?

3                 THE DEFENDANT:  Yes.

4                 THE COURT:  And you've discussed the charges and

5    the possible penalties with Mr. Chambers?

6                 THE DEFENDANT:  Yes.

7                 THE COURT:  Have you had an opportunity to review

8    the discovery materials that are -- that have been produced by

9    the government in this case?

10                THE DEFENDANT:  Yes.

11                THE COURT:  Have you been able to review any

12   questions that you have about the discovery with standby

13   counsel, Mr. Chambers?

14                THE DEFENDANT:  Yes.

15                THE COURT:  Do you feel that you understand the

16   discovery materials that have been produced in this case?

17                THE DEFENDANT:  Yes.

18                THE COURT:  And you filed with the Court a letter

19   that's dated August 15, 2011 in which you asked me to produce a

20   number of additional discovery materials.  Did you draft this

21   letter?

22                THE DEFENDANT:  Yes.  I discussed it with standby

23   counsel, and then they produced a letter and they showed me the

24   draft, and I was happy with the draft, and I signed it.

25                THE COURT:  Okay.  And does this letter adequately

                    USA -v- Abdulmutallab    Case No. 10-CR-20005

1   set forth the additional materials that you would like to

2   review before the trial begins in this case?

3                THE DEFENDANT:  Yes.

4                THE COURT:  I've asked you on prior occasions and

5   will ask you again now, are you satisfied with your

6   relationship with Mr. Chambers and the assistance he's been

7   able to give you in preparing for the trial in this matter?

8                THE DEFENDANT:  Well, certainly it's -- it's

9   certainly -- I feel it's a more -- I have a more decent standby

10  counsel.  I wouldn't say I'm 100 percent satisfied, but I think

11  that's just the way it's going to go.

12               THE COURT:  And are you comfortable that you

13  understand my role in this case and what function I will play

14  as this trial goes forward?

15               THE DEFENDANT:  Yes.

16               THE COURT:  And you're aware of the role being

17  played by the United States -- assistant United States

18  attorneys in this case?

19               THE DEFENDANT:  Yes.

20               THE COURT:  All right.  Can you tell me in your own

21  words what kind of penalties you are facing if you were to be

22  convicted of all of the counts in this complaint -- or

23  indictment rather?

24               THE DEFENDANT:  Life charges.

25               THE COURT:  So you know that if you were to be

                    USA -v- Abdulmutallab    Case No. 10-CR-20005

1  convicted of the charges in this indictment that there would be

2  a possibility of life in prison?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Is there any matter in which you feel

5  that you have questions that have not been adequately addressed

6  or answered or in which you are confused or puzzled by

7  procedure?

8          THE DEFENDANT:  No.

9          THE COURT:  Mr. Chambers, are there additional

10  questions that you'd like to address to Mr. Abdulmutallab or

11  have me address to him?

12          MR. CHAMBERS:  No.

13          THE COURT:  All right.  Any for the government?

14          MR. MARTIN:  No, Your Honor.

15          THE COURT:  All right.  I have to say,

16  Mr. Chambers, that I've had the opportunity to interact with

17  Mr. Abdulmutallab on a number of prior occasions in court, that

18  I've not had any sense that he does not understand the charges

19  against him or that he is not able to assist you with this

20  matter.

21          I understand that it's stressful for any defendant

22  moving toward a criminal trial in which he faces the kind of

23  penalties that Mr. Abdulmutallab is facing, but I have not had

24  any reason to question his competence to move forward in this

25  case, nor to represent himself.

8/17/11 Motion Hearing and Pretrial Conference

1          He -- I would have to characterize this as somewhat

2   of a hybrid representation in that he has sought your

3   assistance on a number of matters even though he prefers to

4   represent himself, and I'm comfortable with that, as well.

5          Let me ask you one additional question,

6   Mr. Abdulmutallab.  You understand that Mr. Chambers has asked

7   that you be examined for competency to go forward in this case?

8          THE DEFENDANT:  Yes, I understand that.

9          THE COURT:  And what's your position on that?

10         THE DEFENDANT:  I guess, simply, I believe I'm

11  competent to proceed by myself and I do not wish to have the

12  examination.

13         THE COURT:  And if I were to order the examination,

14  would you cooperate with it?

15         THE DEFENDANT:  Well, one thing was, as I -- as he,

16  Mr. Chambers said when -- because when we discussed about the

17  motion is initially my idea was perhaps I would even -- that

18  would be a good thing to prove my competency to proceed

19  standby, but then when he put it to me that, you know, the kind

20  of -- the reasons why, or the arguments that have to be put

21  forward before even someone has that type of examination, and I

22  said that's counter productive to what I even want, so I don't

23  want the examination.

24         THE COURT:  All right.  I'm satisfied that

25  Mr. Abdulmutallab is in fact competent to proceed in this

1    matter, and I have no reason to believe that he is not, and I

2    think that there needs to be more of a showing than was set

3    forth in the motion that was filed in this case to order a

4    competency exam.  I'm going to deny the motion without

5    prejudice.

6              If something arises that makes you feel it

7    important to renew that motion, then by all means please do so.

8              Okay.  That's issue number one.  You may sit down.

9              Now, I'd also like to take up the issue of the

10   letter that was filed in which Mr. Abdulmutallab requested

11   about ten additional discovery materials.

12             Government have a copy of that, Mr. Martin?

13             MR. MARTIN:  Yes, we do, Your Honor.  I think

14   Mr. Tukel will address the letter.

15             THE COURT:  All right.  Mr. Tukel.

16             MR. TUKEL:  Yes, we do have it, Your Honor.

17             THE COURT:  Does the government object to any of

18   the discovery requested?

19             MR. TUKEL:  Well, I guess as to the publicly

20   available materials, documentaries, and the first two items are

21   documentaries, those are publicly available.  I mean, they are

22   not exclusively within the government's control.  In fact, I

23   don't believe I even have a copy of one.  It's available on the

24   internet, Mr. Chambers could certainly obtain it without any

25   difficulty, and I think Rule 16(E) speaks to exclusive

                    USA -v- Abdulmutallab    Case No. 10-CR-20005

1    possession by the government, not something that's publicly

2    available.

3              As to the third item, which requests all

4    documentaries, I don't know what the scope of that is.  I can't

5    possibly know all documentaries that are out there, even in

6    English, let alone in other languages, so I don't know how we

7    could possibly comply with that.

8              THE COURT:  Let's take this one at a time.  With

9    respect to the first two items, the documentary entitled Yemen

10   and the War on Terror and the documentary entitled How Safe Are

11   Our Skies, Mr. Chambers, those are publicly available.

12             MR. CHAMBERS:  I can probably shorten this a little

13   bit.  We can provide those materials to him.  The issue is his

14   being able to receive those at Milan.

15             THE COURT:  Okay.  I can take care of that.

16             MR. CHAMBERS:  That's the issue.

17             THE COURT:  Is that with respect to all of these?

18             MR. CHAMBERS:  With respect to all of the items,

19   yes.

20             THE COURT:  So they're all available, and it's just

21   a question of whether the prison officials will let him have

22   them.

23             MR. CHAMBERS:  Correct.  That includes the

24   transcripts, et cetera, we had discussed previously.  We sent

25   them, the facility will not allow him to have those materials.

                    USA -v- Abdulmutallab    Case No. 10-CR-20005

1    He'd like to have them to review for purposes of his defense.

2              THE COURT:  All right.

3              MR. TUKEL:  As to the materials, Your Honor, I have

4    no objection.  However, under the second section of the letter

5    referring to what the institution will or will not allow in, I

6    don't think a radio has anything to do with the defense, and

7    the Economist, Time, Newsweek, Science, Discovery, and all -- I

8    don't know what that last one is, J-u-m-u-a-h, I don't think

9    there's been any showing that that's in any way material to the

10   defense.  Those are not items the government intends to

11   introduce.

12             THE COURT:  No, no, no, I think those are probably

13   outside the scope of discovery.  It's just a question of

14   whether he can have them or not.

15             MR. TUKEL:  Well, as to the radio, I know it's the

16   institution's position that he cannot.

17             THE COURT:  Right, and I'm not trying to override

18   the institution's position on that.

19             MR. TUKEL:  And the same with the magazines, Your

20   Honor?

21             THE COURT:  The same with magazines.

22             With respect to all media articles that cover the

23   case, I don't think there's any way, I mean, we could ever say

24   that we have all media articles.  I assume you have some media

25   articles that you want to provide to him that the prison

1    officials aren't letting him have, is that right?

2            MR. CHAMBERS:  That is correct.  He wants to be

3    able to review those for purposes of jury selection so that he

4    has an idea of what has been in the media, what's been in the

5    press, and potentially what a juror may have read.

6            THE COURT:  But the landscape of those articles or

7    the volume of those articles is circumscribed.  You have

8    articles, you're not asking that anybody undertake a search.

9            MR. CHAMBERS:  No, we have the ability to provide

10    him with the materials, as I indicated, to the extent that he

11    needs them, we can do that.

12            THE COURT:  Okay.  So with respect to the matter

13    generated by NYU Law School, the media articles, and the trial

14    transcript, I'll ask that the prison officials let him have

15    that.

16            With respect to the radio and the magazines,

17    whatever the prison policy is, that's the policy that will

18    apply to Mr. Abdulmutallab, as well.  If the policy is that the

19    prisoners don't get a radio, then he doesn't get a radio

20    either.  The other material, there shouldn't be a problem.

21            Yes?

22            MR. CHAMBERS:  Stand up.

23            THE DEFENDANT:  One thing I just want to add on

24    that is, in fact, the last word I got was the reason why the

25    prison would not provide those materials is because the U.S.

1    Attorney said I cannot get it, and in fact, you know, other

2    inmates in the vicinity where I am can have a, you know, those

3    items such as radio, and so on.

4              THE COURT:  Well, I have the ability to override

5    the U.S. Attorney on those issues, I believe, so if those

6    materials are available generally to other prisoners, you

7    should not be treated any differently.  If they're not

8    available to other prisoners, you wouldn't be treated any

9    differently either, okay?

10             THE DEFENDANT:  Yeah.  As I said, you know, for

11   example, like the radio, the radio, other inmates can get the

12   radio.

13             THE COURT:  Okay.  Well, I'll see, I'll check.

14             Whatever is generally available to others, you may

15   have as well.  If it's not available to others, then you don't

16   get it either, okay?

17             THE DEFENDANT:  Uh-huh.

18             THE COURT:  All right.

19             So we'll move forward on this, and I will --

20   someone from my chambers will report back to you and to the

21   assistant U.S. attorneys with respect to the response of the

22   prison officials with respect to these issues.

23             Now, with respect to the proposed jury

24   questionnaires and the procedure for jury selection, I have the

25   objections that were filed by the U.S. Attorney's office.

                    USA -v- Abdulmutallab     Case No. 10-CR-20005

1          Mr. Chambers, you did not file any objections, is

2    that right?

3          MR. CHAMBERS:  That is correct, but there are a few

4    that we believe the wording has to be adjusted in a couple of

5    questions.

6          THE COURT:  Okay.  Were you going to let us know

7    that?

8          MR. CHAMBERS:  Yes, Your Honor.  Because of the

9    timing and Mr. Abdulmutallab's availability, it was difficult

10   to get him these in advance, and my understanding is he did

11   receive them and has had a chance to look at them, but there

12   are just some slight wording on maybe four questions.

13         THE COURT:  Okay.  Then let me just quickly go over

14   some of the changes that I've made.  Do you have a copy of the

15   questionnaire?

16         With respect to Question Number 4, the ethnic

17   background, I'm going to leave that question in.

18         With respect to Question 12, I'm going to leave

19   that question in.  That asks the country in which your parents

20   were born.

21         I'm going to strike Questions 13 and 14.  That was

22   father's and mother's occupation.

23         And I should indicate to those who are just

24   observing here that these are in response to the government's

25   objections.  I'm just responding specifically to them.

              USA -v- Abdulmutallab   Case No. 10-CR-20005

8/17/11 Motion Hearing and Pretrial Conference

1              On Question 1, I agree that the only countries that

2      need to be inquired about are Nigeria, Yemen and the United

3      Arab Emirates, and we'll strike all the other countries.

4              I am leaving in Question Number 20 but striking

5      Questions 21, 22 and 23.

6              And I am leaving Question 24 in, except that I'm

7      striking out, "Any of your close personal friends."  So

8      Question 24 is, "Do you, your spouse, or any of your immediate

9      family members belong to any organization that deals with or

10     attempts to influence United States foreign policy in the

11     Middle East?"

12             On Question 30, I'm changing that to say 5 years

13     instead of 15 years.

14             I am striking Questions 41, 42, 43, ask about

15     specific pilot training.

16             I am striking all of Question 47, and substituting

17     instead a general question that asks, "Do any of your life

18     experiences affect your perception of Muslims?  If so, please

19     explain."

20             I am striking Question 50.

21             I am striking Question 54.

22             And I am changing Question 55, the last sentence

23     will now read, "Will you be able to comply with these

24     restrictions?"  And then it says, "If no, please explain."

25             Question 69 has been expanded to include the

                   USA -v- Abdulmutallab    Case No. 10-CR-20005

1    following phrase at the end, "Or have you had any such dispute

2    in the past?"

3              And I'm striking Question 70.

4              On Question 71, I am striking the first sentence

5    which says, "There may be evidence introduced in this case

6    about the activities of American and foreign intelligence

7    services," since the government indicated there won't be.

8              The government objected to kind of the length of

9    Question 72, but I'm going to leave it in, except that, well, I

10   guess I'm just leaving it in as is.

11             I'm leaving Question 74.

12             Question 75B has been restated as follows.  It

13   says, "The government alleges that defendant has associated

14   with Al-Qaeda," and I have added this at the end, "Despite any

15   views you might have concerning Al-Qaeda, can you decide this

16   case based solely on the evidence presented at trial?"

17             On Question 78, I have limited that question to the

18   person answering only, so have struck the, "Anyone in your

19   family or close personal friend."

20             On the questions that are number 79 through 87, I'm

21   leaving in only Question 81 and 86.

22             On the next page, I'm leaving in Questions 89 and

23   90; striking 88 and 91.

24             I'm striking Question 92.

25             Question 93, I'm going to substitute the statement

USA -v- Abdulmutallab    Case No. 10-CR-20005

1    of the case that the government has just provided.

2              On Question 101, I have added the following phrase

3    so that it now reads, "Have you heard any statements by any

4    U.S. government officials or by any attorneys involved in this

5    case concerning the defendant?"

6              And then I'm striking Question Number 102 and 106.

7              On Question 110, I've added the following, "Do you

8    know anyone in the United States Attorney's Office in Detroit,

9    Michigan, or standby counsel, Anthony Chambers, or anyone in

10   his office?"

11             And on Question 111, "Do you," and then I've

12   crossed out, "Your spouse, any member of your family or any of

13   your close friends," so it just says, "Do you know or have any

14   connection with the defendant Umar Farouk Abdulmutallab?"

15             I have stricken Question 112.

16             Question 118, I have redrafted that to say, "If you

17   are selected to serve as a juror in this case would you be

18   concerned about reactions to the verdict by anyone?"

19             And then on Question 131, I think the government is

20   correct, I can't really give the jurors a witness list at the

21   time.  I mean, I don't know what your plan is in terms of

22   producing a witness list.  Some of the names must obviously be

23   known by now, and it would be helpful to give them the ones

24   that you know, but there's nothing that compels you to do that

25   if you don't want to.

8/17/11 Motion Hearing and Pretrial Conference

1          MS. CORKEN:  Our preference would be to wait until

2     the day of trial to announce the identities of the witnesses,

3     given the nature of the case.

4               THE COURT:  Okay.  Then we'll strike 131.

5               I'm also going to strike 132, 133, 134.

6               LAW CLERK:  Judge, on 131, are you going to leave

7     it in about the list of the attorneys and the court personnel

8     and yourself?

9               THE COURT:  I think I've already asked that.

10              LAW CLERK:  I didn't see it anywhere else.

11              THE COURT:  Oh, yeah, 131, I'm going to, yes, I

12    will ask if they know me or any court personnel or attorneys.

13              So 132, 133, 134, I'm going to strike, and that's

14    it.

15              And your objections -- okay.

16              MS. CORKEN:  That's fine.  Thank you.

17              THE COURT:  Mr. Chambers, are you going to get

18    those objections to us right away?

19              MR. CHAMBERS:  Yes, and you have addressed all but

20    one.

21              THE COURT:  All but one?

22              MR. CHAMBERS:  Yes, and I would indicate it's

23    Question 108, Page 35.

24              THE COURT:  Question number?

25              MR. CHAMBERS:  108, one zero eight.

                   USA -v- Abdulmutallab    Case No. 10-CR-20005

1          THE COURT:  You just want to rephrase that?

2          MR. CHAMBERS:  Yes.

3          THE COURT:  Can you tell me how you want it

4    rephrased?  Because maybe we can just do that now.

5          MR. CHAMBERS:  Just maybe even take out the word

6    "massive."

7          THE COURT:  All right.  I agree with that.

8          All right.  Then this questionnaire, the procedure

9    will be as follows.  We're calling in about 250 jurors.  They

10   will be called in on September 14th in two phases; half in the

11   morning at 10:00 --

12         THE CLERK:  9:00.

13         THE COURT:  9:00?  9:00, and then half in the

14   afternoon at 2:00.

15         I will give them some opening instructions, some

16   general instructions about the case and the procedure for

17   filling out the questionnaire.

18         My plan would be that Mr. Abdulmutallab would be

19   here in this courtroom, and that the jurors would be in Room

20   115, but that we would have a video feed so that

21   Mr. Abdulmutallab can watch the proceedings in 115, and the

22   jurors can be aware of Mr. Abdulmutallab being here in this

23   courtroom.

24         So we'll do it in two phases, at 9:00 and at 2:00.

25         The jury department has indicated that they can get

              USA -v- Abdulmutallab    Case No. 10-CR-20005

1    the questionnaires copied by, what did they say, two days,

2    Carol?

3                  THE CLERK:  Yes, they said they'd have it ready by

4    Monday, the 19th, by noon.

5                  THE COURT:  Okay.  On Monday, the 19th, by noon,

6    but they're hoping to get it done by Friday, which is the 16th.

7                  Okay.  Then we will reconvene, you'll have a chance

8    to review the questionnaires, obviously.  We'll reconvene on

9    the, what did we decide, the 21st or 22nd?  What day of the

10   week is the 22nd?

11                 THE CLERK:  22nd is a Thursday.

12                 THE COURT:  Let's do this on the 22nd.  What's the

13   time?

14                 THE CLERK:  10:00.

15                 THE COURT:  All right.  At 10:00, the 22nd at

16   10:00.

17                 And what I would propose is this, I would ask you

18   in advance of that to separate the questionnaires into three

19   piles; one is "clearly unacceptable," second is "clearly

20   acceptable" to your side, and then the third would be

21   "questionable."  So we can, on the 22nd, eliminate anyone from

22   the pool who both sides have agreed is clearly unacceptable,

23   and then we can also argue on the 22nd the suitability of

24   anyone in that middle range.

25                 Now, I don't know if we're going to have a chance

                  USA -v- Abdulmutallab    Case No. 10-CR-20005

8/17/11 Motion Hearing and Pretrial Conference

1    to do all of the arguments on that day, but we could at least

2    get a sense of some of them where there may be an issue.  At

3    least on the 22nd, we can eliminate some portion that, by their

4    answers to the questionnaires, would not be suitable jurors

5    whether for vacations, or because of views that they hold, or

6    whatever.

7              MR. CHAMBERS:  I'm just curious as to how the

8    Court, how would it be able to provide these to

9    Mr. Abdulmutallab for him to be able to review them between the

10   19th and the 22nd.

11             THE COURT:  Well, hopefully they'll be done by the

12   16th and not the 19th, and I'm hoping that somebody from your

13   office would be able to take them out to Milan.

14             MR. CHAMBERS:  That's fine, as long as we will have

15   actual copies that we can pick up and --

16             THE COURT:  Oh, yes.

17             THE CLERK:  They're going to scan them on a disk.

18             THE COURT:  Does he have a computer there?

19             MR. CHAMBERS:  He does have access to a computer

20   there.  We could take the hard copies, or if they're on a disk,

21   we could certainly -- we'd have to get permission, obviously,

22   from Milan to send it in as if it's discovery, and then he

23   could look at them at his leisure, also.

24             THE COURT:  I'll make sure that whatever form

25   they're in, he has the opportunity to look at them.

                 USA -v- Abdulmutallab    Case No. 10-CR-20005

8/17/11 Motion Hearing and Pretrial Conference

1          THE DEFENDANT:  If it's a disk, I only have very

2      limited hours when I can view it, and perhaps that might not be

3      enough to view it in three days.

4          THE COURT:  Well, let's see if we can get a hard

5      copy.  I don't think that should be a problem.

6          Okay.  And then following the -- I forgot that on

7      the 14th, following the instructions to the jury while they're

8      filling out questionnaires, we'll have a motion hearing on the

9      other motions that have already been filed; that is, the motion

10     to suppress statements and the motion for change of venue.  I

11     think those are the only other motions outstanding right now.

12         THE CLERK:  There's discovery.

13         MS. CORKEN:  There are other motions.

14         THE COURT:  Are there other motions besides the one

15     we just talked about?

16         MS. CORKEN:  There's another motion under seal,

17     there is a motion for individual voir dire, there's a motion

18     for grand jury transcripts.

19         THE COURT:  All right.  We'll take all of those up

20     on the 14th.

21         Now, with respect to individual voir dire, my plan

22     would be this.  Once we have eliminated from the jury pool

23     those who are clearly unsuitable, we'll take the week of

24     October 4th to begin the actual voir dire of individual jurors,

25     and I'm going to do them one at a time.  We're going to

                    USA -v- Abdulmutallab    Case No. 10-CR-20005

1   continue questioning individual jurors until we have a pool of

2   about 45 jurors, and we are going to seat 12.

3              Mr. Abdulmutallab is entitled to ten peremptories;

4   the government is entitled to seven peremptories, and then I'm

5   also going to seat four alternates, and the defendant is

6   entitled to two peremptories against the alternates, and the

7   government is entitled to two peremptories against the

8   alternates.  So we'd have 10 plus -- or 12 plus 4, 16; plus 10,

9   26; plus 7, 33; plus 4, 37.  But I'm going to qualify 45 just

10  in case.

11             As we question the jurors, I'm going to give each

12  side six minutes each with each individual juror, that is, I'll

13  ask some preliminary questions, and I will give counsel for

14  each side, Mr. Abdulmutallab himself, and counsel for the

15  government, six minutes to question each individual juror.  And

16  then after each individual juror is questioned, I'm going to

17  ask for challenges for cause, so we'll get, as I said, 45

18  jurors qualified for cause.  When we have 45, we'll stop, and

19  then exercise peremptories.

20             Carol is reminding me that we have a pretrial set

21  for the 15th which we won't need since we're doing this on the

22  14th.

23             Okay.  Anything else I can cover for us today?

24  Mr. Chambers?

25             MR. CHAMBERS:  I don't believe that there's

                    USA -v- Abdulmutallab    Case No. 10-CR-20005

1    anything else.

2              THE COURT:  Mr. Abdulmutallab?

3              THE DEFENDANT:  No.

4              THE COURT:  Okay.  You need to stand when you're --

5    okay.  So nothing else?

6              THE DEFENDANT:  No.

7              THE COURT:  Mr. Tukel?

8              MR. TUKEL:  Your Honor, at the last hearing, there

9    was a government motion to define the role of standby

10   trial(sic), and I think the Court indicated that it would be

11   sending out a proposed order delineating what, if any, sort of

12   hybrid representation would be allowed, and I don't think the

13   Court has done that yet.  Do you intend --

14             THE COURT:  I haven't, but I --

15             MR. TUKEL:  Will that be the 14th, or will that be

16   prior to that time?

17             THE COURT:  No, I'll try to get something out prior

18   to that time.

19             Let me say, because I have had a chance to review

20   the cases that have been cited by the government, and it's my

21   reading of those cases that the Court has wide discretion with

22   respect to allowing a hybrid type of representation with

23   certain limitations.  One limitation, and the way in which

24   courts most often are reversed, is if the defendant wishes to

25   represent himself and the Court imposes on him counsel who he

              USA -v- Abdulmutallab    Case No. 10-CR-20005

1    does not wish to do things that he would prefer to do himself.

2    That is not the case here.  Mr. Abdulmutallab, as long as he

3    proceeds in an orderly manner, and he has certainly done so up

4    to this point, may represent himself to the extent that he

5    wishes to do so, and I'm not trying to impose Mr. Chambers on

6    him in any way.

7            On the other hand, courts have also been given wide

8    discretion to permit the defendant to ask for assistance from

9    standby counsel for any matter in which he chooses to engage

10   standby counsel.  The Court can deny it, and some judges do,

11   but I'm not inclined to deny it in this case.  If

12   Mr. Abdulmutallab wishes the assistance of Mr. Chambers, I'm

13   going to let him utilize that assistance to the extent that he

14   wishes to do so.

15           The only limitation I am placing on that is that I

16   want this done in an orderly fashion.  I want to know ahead of

17   time, at least the day before, and preferably more than that,

18   what Mr. Abdulmutallab wants to do and what he wants

19   Mr. Chambers to do on his behalf so we don't show up in court

20   and have some ongoing discussion about that on a daily basis.

21   I believe that it's important to keep orderly proceedings, and

22   I think that we can do so within those parameters.

23                                              (3:50 p.m.)

24           MR. TUKEL:  One of the issues that's raised by

25   those cases, Your Honor, is the situation where a defendant

USA -v- Abdulmutallab    Case No. 10-CR-20005

1    argues directly to the jury but does not testify.  There's a

2    number of cases that discuss that.

3              At the last hearing, Mr. Abdulmutallab indicated

4    that he does wish to argue to the jury, but obviously we don't

5    know at this point whether he wishes to testify, so I guess I'm

6    not sure exactly how to deal with that situation, but the

7    government objects to the idea as those cases have indicated

8    that the defendant could argue essentially facts and not

9    testify to support those facts.

10             THE COURT:  I'll have to take another look at those

11   cases.  On that particular issue, I guess I'm not prepared to

12   comment right now.

13             Anything further, Mr. Chambers or

14   Mr. Abdulmutallab?

15             MR. CHAMBERS:  No.

16             THE COURT:  Mr. Tukel?

17             MR. TUKEL:  No, Your Honor.

18             THE COURT:  All right.  Thank you.

19             I'm sorry, I did want to say one other thing that I

20   didn't make clear before, and that is the jurors in this case

21   are going to be identified by number only.  No names will be

22   identified on their questionnaire.  The only people who will

23   have the identifying information is the jury department.

24   They'll be -- and I'll explain all of that to them, but I want

25   the media to be aware that there will be no identification of

                USA -v- Abdulmutallab     Case No. 10-CR-20005

8/17/11 Motion Hearing and Pretrial Conference

1   any jurors or potential jurors by name, by address, no

2   identifying information, and I'm issuing an order that starts

3   as of this moment that will say no contact by any member of the

4   media with any juror or potential juror or anyone filling out

5   questionnaires with respect to this case.

6                    Okay.   Thank you.

7                    (Proceedings concluded 3:54 p.m.)

8                         —    —    —

9

10

11

12

13

14                    CERTIFICATE OF COURT REPORTER

15

16

17   I certify that the foregoing is a correct transcript

18   from reported proceedings in the above-entitled matter.

19

20

21   _____          _____

     SUZANNE JACQUES, RMR, CRR                       Date
22   Official Court Reporter
     Eastern District of Michigan
23

24

25